UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy L. Pearson, : Case No. 1:12-cv-966
  :
  Plaintiff, :
  :
vs. :
  :
United Automobile Workers International :
Union, et al, :
  :
  Defendants. :

**ORDER**

This case is before the Court following the remand from the Sixth Circuit Court of Appeals.  The Sixth Circuit vacated this Court's grant of summary judgment to Defendants, which was based on the Court's conclusion that Plaintiff's breach of duty of fair representation claim against the UAW and its Local Union 863 were barred by the applicable six-month statute of limitations.  The Sixth Circuit held that Pearson did not discover the union's alleged failure to convey an August or September 2008 settlement offer in Pearson's discharge grievance until June 15, 2012, rendering timely his claim based upon that failure.  The Sixth Circuit remanded the case for this Court's consideration of two issues raised by Defendants in its summary judgment motion which the Court did not address in the prior order.  (See Doc. 75 at 6, PAGEID 1704)

The Court has considered the original summary judgment briefing (Docs. 54-55, 60, and 63-64), the exhibits filed with those memoranda, and the supplemental authorities filed by the parties after remand.  (Docs. 78, 79, 80 and 81)  For the following reasons, the Court concludes that Defendants' motion for summary judgment should be granted, because Pearson failed to exhaust his internal union remedies, and he has

failed to establish a genuine factual dispute that the union breached its duty of fair representation to him.

Factual Background

The relevant facts giving rise to Pearson's claims are discussed in this Court's prior order and in the Sixth Circuit's decision. Briefly summarized, Pearson worked for Ford Motor Company for many years. Ford terminated his employment in 2006, and the Union filed a grievance on his behalf alleging his termination lacked just cause. After a hearing in October 2008, an arbitrator rejected Pearson's grievance. While the grievance was pending, Pearson filed a wrongful termination lawsuit against Ford which was eventually scheduled for jury trial in 2012. In discovery conducted in that case, Ford produced evidence about settlement discussions between Ford and the union representatives. Pearson claims in this case that the union never informed him of Ford's last settlement offer (the details of which are explained in the sealed motions and exhibits in this case). Pearson claims that if he had been informed of Ford's offer, he would have accepted it.

Pearson filed his complaint in this case in December 2012, alleging that the Union breached its duty of fair representation to him by failing to inform him of the settlement offer. The Union moved for summary judgment, arguing that (1) Pearson's suit was not filed within six months of the date on which he knew or reasonably should have known of the Union's alleged breach; (2) Pearson failed to exhaust his internal Union remedies; and (3) the Union did not breach its duty to Pearson, a claim which would require Pearson to show that the Union acted arbitrarily or with hostility, or discriminated against him. As noted above, this Court found that Pearson's complaint

was not timely filed and did not discuss or resolve the other two issues.

## DISCUSSION

Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of an undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the non-moving party cannot simply assert the existence of a genuine factual dispute by relying on the pleadings. The non-moving party must come forward with affirmative evidence and identify specific facts in dispute.

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

Failure to Exhaust

Pearson admits that he did not pursue the internal appeals process described in Article 33 of the UAW Constitution. Section 2 of Article 33 describes the various steps of the union's appellate procedure. Briefly summarized, the first step is to the body immediately responsible for the challenged conduct; the second step is to the International Executive Board ("IEB"); and the third step is to the Convention Appeals Committee ("CAC") or Public Review Board ("PRB"). Paragraph 2 of Section 2(a) states that if the appeal involves a challenge to the handling or disposition of a grievance, the first level is to the local and then to the union, followed by the IEB and the CAC or PRB. (Doc. 54-4, UAW Constitution at Article 33, Section 2, PAGEID 292)

Pearson concedes the general rule, that he must exhaust these remedies before prosecuting a claim against the union in federal court. Clayton v. United Automobile Workers Union, 451 U.S. 679 (1981). Clayton identified three exceptions to that general rule: (1) union officials are so hostile that plaintiff has no hope of a fair hearing; (2) the internal appeals process is inadequate to reinstate his grievance or award him full relief; and (3) exhaustion would unduly and unreasonably delay his resort to federal court. Id.

-4-

at 689.  Pearson argues that all three exceptions apply here.

Pearson first asserts that he could not have filed an appeal in June 2012 because he lacked standing to do so.  He contends that at that time, he was no longer a member of the UAW.  He asserts that the union "removed" him from membership on February 9, 2011, citing deposition testimony of Richard Isaacson, a union official who oversees the internal appeals procedures.  Pearson argues that his membership removal was improper under the union's policies, as only a member can request to withdraw from membership.  Defendants respond that Pearson is simply speculating about his membership status in order to avoid his failure to exhaust his remedies.  They dispute his assertion that the union "removed" from him membership.  The union's interrogatory answer about which Isaacson was questioned simply stated that the union's records show Pearson was an active member until February 9, 2011.  Isaacson did not testify that the Union "removed" Pearson; he simply did not know why Pearson was no longer listed as an **active** member on that date.  (Isaacson Dep. at 24, PAGEID 1184)  Active members are those members who work and pay dues.  Pearson stopped working for Ford when he was terminated in April 2006, and stopped paying dues as a result.  Defendants also cite Isaacson's testimony that membership in the UAW is for life, unless the member initiates his withdrawal.  Pearson never did so.

Regardless of his membership status in June 2012, Defendants also argue that Pearson was unquestionably a member at the time of the underlying events.  Section 4(b) of Article 33 states that a member's time to appeal starts when he becomes aware of the alleged breach of duty.  Nothing in Pearson's speculation supports his assertion that if he had initiated an appeal in June 2012, when he became aware of the alleged

-5-

breach, it would have been immediately rejected.

Alternatively, Pearson argues that the UAW's internal appeals bodies lacked jurisdiction to hear what he describes as his "unique breach of fiduciary duty of fair representation claim." (Doc. 60 at 19) Pearson notes that Article 33, Section 1 defines what may be appealed, and states that members have the right to appeal "any action, decision, or penalty" by any union representative. Pearson asserts that he is not challenging any "decision or action" or alleging that any union official penalized him. Rather, as he states, "the crux of Mr. Pearson's claim against Defendants is their failure in 2008 to engage in the simple ministerial act of conveying to him Ford's generous offer(s) to settle his grievance short of arbitration. That is not the type of specific and identifiable culpable act contemplated by Section 1 of Article 33." (Doc. 60 at 20) The Court notes that Section 1(d) specifically states that an appeal will also lie from a "failure or refusal to act" by any union official. (See Doc. 55-1 at 24, PAGEID 361) Pearson's argument contradicts the plain language of the contractual provision which clearly covers a "failure" to act.

Pearson also argues that even if the union accepted and considered his initial appeal, the Public Review Board would have lacked jurisdiction over his appeal. He cites Section 3(f) of Article 33, defining PRB's jurisdiction over any appeals that involve "action or inaction relative to the processing of a grievance against an employer...". He asserts that the "inaction" he alleges against the Defendants - the failure to convey to him Ford's offer - does not relate to the "processing of the grievance" against Ford. Pearson confirms that he has never accused Defendants of failing or refusing to represent him in the grievance process or in the arbitration, and he suggests that his

-6-

claim is sui generis.

Even if he avoided this purported jurisdictional hurdle, Pearson then argues that the PRB would have lacked jurisdiction under Section 4(I) of Article 33, because he did not allege conduct involving "fraud, discrimination or collusion with management, or that the disposition or handling of the matter was devoid of any rational basis."  He reaffirms that his claims do not involve "typical" claims against union representatives; rather, he alleges that "the Union mistakenly forgot to undertake a basic ministerial step of providing him basic information he needed to make an informed decision."  (Doc. 60 at 21)

While creative, Pearson's arguments attempt to parse too finely the language of Article 33.  The word "processing" is not limited by any terms contained in 3(f).  And Pearson has not identified anything in Article 33 that suggests or imposes such a limit.  The Oxford English Dictionary defines "process" in relevant part as: "The whole of the proceedings in any legal action."[1]  As the Defendants note, the union's internal appeals process is provided and intended to address any claim arising from a decision, action or failure to act by the union.  The language used in Article 33 is broad, and can easily encompass the claim Pearson asserts here: the union's failure to convey a settlement offer.  Defendants note that despite Pearson's contention in opposing summary judgment that he is simply complaining about a mistake or a forgetful union representative, his complaint in this case specifically alleges that the Union's conduct was "inexplicable, irrational and arbitrary."  (Doc. 64 at 13, quoting Doc. 1 at ¶25.)

---

[1] See www.oed.com/view/entry, last accessed April 8, 2016.

The Court must reject Pearson's arguments concerning standing and the lack of jurisdiction, because the Court finds they are speculative and conclusory. The Sixth Circuit has described the critical role that exhaustion of internal remedies plays in national labor policy: "Exercising internal union remedies requires dialogue among those involved in the process and can repair a claimed wrong or explain why no wrong occurred, all short of litigation. Allowing employees to sidestep this system substitutes litigation for the method chosen by the employer and union for orderly resolution of employee grievances. It denies the system an opportunity to work ...". Chapman v. United Auto Workers Local 1005, 670 F.3d 677, 684 (6th Cir. 2012)(en banc). Pearson's arguments that his appeal would have been dismissed because he was not an active member, or because the appeals body would decline jurisdiction, are simply insufficient to excuse his failure to exhaust those remedies.

Pearson next contends that even if he had pursued an internal appeal, it would not have afforded him complete relief. In this case Pearson alleges damages in the form of back pay, lost retirement income and mental anguish damages. Isaacson testified that he does not know of a case in which the PRB awarded damages based on lost retirement income, and Pearson claims that Defendants have not identified such a case. Nor have they cited a PRB decision that awarded mental anguish damages. He therefore argues that an internal appeal would not have rendered him complete relief.

Defendants respond that Isaacson simply testified about his personal knowledge, that he did not know of cases in which the PRB may have awarded damages for future earnings. Isaacson's lack of personal knowledge is not evidence that the PRB would be prohibited from awarding Pearson a make-whole remedy, in whatever fashion might

have been appropriate to the facts presented to the PRB. Pearson's speculation to the contrary is just that, speculation.

And with regard to mental distress damages, Defendants cite <u>Nitzsche v. Stein, Inc.</u>, 797 F.Supp. 595, 599 (N.D. Ohio 1992), where the district court observed that in the Sixth Circuit:

> ... damages for emotional and mental distress may be awarded for the union's breach of its duty of fair representation. <u>Farmer v. ARA Services, Inc</u>., 660 F.2d 1096, 1107 (6th Cir. 1981). The courts which have followed this line of reasoning have cautioned, however, that such damages should only be awarded where the union's conduct is extreme and outrageous. See, e.g., <u>Baskin v. Hawley</u>, 807 F.2d 1120, 1133 (2d Cir. 1986); <u>Bloom v. International Brotherhood of Teamsters Local 468</u>, 752 F.2d 1312, 1315 (9th Cir. 1984); <u>Richardson v. Communications Workers of America</u>, 443 F.2d 974, 982 (8th Cir. 1971); <u>DeArroyo v. Sindicato De Trabajadores Packinghouse, AFL-CIO</u>, 425 F.2d 281, 293 (1st Cir. 1970), cert. denied 400 U.S. 877 (1970).

<u>Nitzsche</u> was an order denying a motion under Rule 12 to strike plaintiff's prayer for emotional distress damages. The court did not address the substance of the facts alleged in that case that might support such a claim. However, in <u>Baskin v. Hawley</u>, cited by <u>Nitzsche</u>, the Sixth Circuit held that the facts were sufficient to permit plaintiff to present his claim for emotional distress damages to the jury. Plaintiff had been denied a pension after many years of union employment, ostensibly because had a disqualifying break in service by working for a non-union employer. He presented evidence that the local union assigned him to that employer, assuring him that it was a union shop. Then during discovery in the case, he uncovered evidence that the allegedly non-union employer had in fact made union pension contributions during the time he worked there, and that the union had fraudulently concealed that evidence. These facts were sufficient to submit the issue to the jury. Defendants contend that

there is no comparable evidence of any "extreme and outrageous" conduct by any union official in this case. Indeed, they note that Pearson's opposition brief describes the union's conduct as a mistake, or a forgetful oversight.

This Court rejects Pearson's suggestion that he should be excused from exhausting his internal union remedies because the union's conduct was so outrageous that if he had appealed under Article 33, he would have been precluded from recovering emotional distress damages. That argument is based upon his speculation that the union appellate bodies would be precluded from such an award, and there is insufficient evidence to support that speculation.

Finally, Pearson argues that exhaustion of his union appellate rights would have unreasonably delayed his federal lawsuit and his opportunity to be awarded damages. He notes that the arbitration of his grievance occurred in October 2008, but it was not until June 2012 that he discovered the settlement offer that gives rise to his claim in this case. Given that delay, he argues that pursuing what he calls the "tortuous and attenuated process" of the Union's internal appeals procedure would have taken years, and would have unreasonably delayed the prosecution of his claims. Pearson created a timeline of a number of decisions in PRB appeals that reflects the amount of time that elapsed between the decision of the IEB and that of the PRB. These range from 3 months to over 2 years, and in some cases could not be determined. (See Doc. 60 at 25) He argues that he should be excused from his failure to exhaust because it is unreasonable to require him to wait eight years or more before seeking judicial recourse.

Defendants respond that Pearson's contention of a years-long, unreasonable

delay lacks a factual basis, and in any event is completely speculative because he did not file an appeal. Arguing that it would "take too long" completely ignores the salutary policies that underlie the exhaustion requirement. Defendants further argue that Pearson fails to cite the entirety of Isaacson's testimony on this issue, which does not support Pearson's contentions. Isaacson was asked:

> Q. Starting from the time the member appeals to the International Union you may or may not get involved, all the way to the time the executive board finally signs off on the final decision, are we talking in terms of weeks or months or can you give me some idea?
>
> A. Minimum, months. Could go to years depending on the complexity of the case, availability of witnesses, responses to communications. A whole host of -- as you said, there's a lot of moving parts.
>
> Q: Right. And you said a minimum of months. Like – months like –
>
> A. Couple of months, if you –
>
> Q. A couple of –
>
> A. If everything goes the way it's supposed to, usually you can get them done within thirty to sixty days if you get lucky.
>
> Q. From soup to nuts?
>
> A. If everything is perfect, yes.
>
> Q. Going from your initial investigation all the way through the executive board signoff?
>
> A. Usually -- usually it would take a minimum of two months to do that.

(Doc. 64-5, Isaacson Dep. at 51-52, PAGEID 1189)

Isaacson also testified that he could not identify a specific length of time it would take to process a PRB appeal. He said it "could be a year," could be longer or shorter: "Again it depends on how things progress. Hearings get scheduled. People's

schedules." (Id. at 88, PAGEID 1194) Defendants contend that these time estimates are not unreasonable on their face, or as a matter of law. They also note that Pearson failed to serve the Union with his complaint in this case for almost seven months after he filed it.

Pearson's reliance on Geddes v. Chrysler Corp., 608 F.2d 261 (6th Cir. 1979) is misplaced. In that case, the district court granted judgment to the union and the employer based on plaintiffs' failure to exhaust. The Sixth Circuit reversed, noting the evidence that the union had acquiesced in the employer's reduction of plaintiffs' salary and benefits, which plaintiffs alleged breached their contract with their employer as well as the union's duty of fair representation. The court of appeals remanded the issue of futility to the district court, noting that given the evidence that the union's position against the plaintiffs had hardened, they may well be able to show that exhaustion of their union appeals would be futile. But here, in addition to being speculative, Pearson's arguments that an appeal would take "too long" do not establish that his appeal would have been futile.

Finally, Pearson suggests in his opposition brief that exhaustion should be excused due to union hostility. He concedes, as he must, that his complaint does not allege hostility. He contends that the union representatives (Turner and Crump) involved in the underlying events have testified that they informed Pearson about Ford's settlement offer. Pearson denies that they did so. Pearson suggests that if he is correct, Turner and Crump "must have lied to perpetuate a cover-up of the injustice done to Mr. Pearson." (Doc. 60 at 26) This accusation, if Pearson could demonstrate some basis for making it, does not exhibit the type of "hostility" that might excuse

Pearson's obligation to exhaust his union remedies. Hostility by union officials must be of such a level that the member could show that he had little hope of obtaining a fair appellate hearing. The witnesses' testimony in this case about whether or not Ford's settlement offer was conveyed to Pearson has nothing to do with Pearson's ability to initiate and prosecute an appeal when he discovered the facts about the settlement offer. And he makes no cogent argument that either Turner or Crump would have been involved in any decision-making at any appellate level. Pearson's suggestion of "hostility" is simply insufficient to excuse his failure to exhaust union remedies.

Breach of Union's Duty of Fair Representation

Even if Pearson has articulated some basis upon which the Court could excuse his failure to exhaust, the Court finds that he has not established a genuine factual dispute that Defendants breached their duty of fair representation. The Supreme Court has described that statutory duty of representation as the union's obligation "... to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 76 (1991). In Vaca v. Sipes, 386 U.S. 171, 190 (1967), the court held that a breach of that duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

Pearson concedes these authorities, and recognizes that the federal courts generally defer to the judgments and decisions of union representatives in most day-to-day decisions. And he agrees that "mere negligence is insufficient to tag a union with a breach of its duty of fair representation in cases where the grievant/plaintiff is second

guessing the wisdom of the union decisionmakers." (Doc. 60 at 28) Pearson does not allege, for purposes of his breach of duty claim, that Defendants acted with hostility, or discriminated against him, or were dishonest in representing him and in processing his grievance. Instead, he argues that the union representatives acted arbitrarily by failing to perform "a simple ministerial act" of telling him about the settlement offer. Pearson relies on Sparks v. Abe May Packing Company, 884 F.2d 1393 (6th Cir. 1989), which he argues presented an almost identical factual scenario.

In Sparks, the plaintiff was injured on the job; when he returned, he alleged he was offered lesser positions at a lower rate of pay. His union filed a grievance on his behalf, and several informal meetings were held with company officials to discuss the grievance. The company offered plaintiff a different job which he refused; according to the union, the company then offered him his old job back at his former salary. The union advised him to accept it, but plaintiff refused. The union then terminated the pursuit of his grievance because he had refused several settlement offers. Plaintiff filed suit against the employer and his union, alleging a violation of the contract and the union's failure to represent him. In opposing the union's summary judgment motion, plaintiff filed an affidavit stating that the final offer conveyed to him was for his old job at a lower rate of pay, while the union official testified that he told plaintiff the offer was for his original position, his "old pay and the job back." Id. at *4. The district court granted summary judgment to the union, finding that

> ... plaintiff has not shown that the Union acted in a discriminatory or arbitrary manner or in bad faith. The evidence showed that the Union attempted to obtain plaintiff's reinstatement. In fact, plaintiff was offered his old job back three times. At least two of those offers were at a lower rate of pay but even if the third offer was at the old pay rate, without

-14-

> plaintiff's knowledge, it does not prove breach of duty of fair representation. The Union terminated the pursuit of the grievance only after plaintiff refused several settlement offers. Even [the union representative's] statement to plaintiff that he believed the grievance was ludicrous and a waste of time does not show bad faith. A good faith decision that a grievance lacks merit does not constitute a breach of duty of fair representation because a Union must be allowed to exercise reasonable discretion in representing its members.

Id. at *6.

The Sixth Circuit reversed, and remanded with instructions to consider whether the union's alleged conduct in failing to explain the critical terms of the settlement was arbitrary conduct. However, contrary to Pearson's suggestion, the court of appeals did not determine that the alleged failure was arbitrary conduct, nor did it remand with instructions that plaintiff had established a triable issue of fact on that question. Moreover, it is clear that the substantive content of the settlement discussions was directly relevant to the asserted basis of the union's decision to terminate the grievance.

Pearson also cites Vencl v. International Union of Operating Eng'rs, Local 18, 137 F.3d 420, 426 (1998), where the Sixth Circuit held that the union's failure to timely file plaintiff's grievance, which caused the arbitrator to dismiss it, was arbitrary conduct. The union filed it one day late, and tried to excuse the untimely filing by explaining that its business representative had gone on vacation. The court held that only "reasoned conduct, not irresponsible inattention" would excuse the union's failure to preserve plaintiff's grievance rights. In finding that the union's conduct was arbitrary, the Sixth Circuit cited Ruzicka v. General Motors Corp., 649 F.2d 1207, 1209 (6th Cir. 1981), where the union represented the plaintiff through the first two steps of the grievance process. The third step required it to file a statement of the grievance with the employer

(GM); the evidence showed that the union requested and received two extensions to file the statement but failed to do so timely. GM then refused to process the grievance based on that failure. The union presented evidence that it was the prevailing practice for the union and GM to freely grant extensions if one party was not ready to exchange grievance statements, and that plaintiff's union representative had relied on that prevailing practice when he did not timely file. After GM informed the union that it was rejecting the grievance, the union attempted to file the statement without success. The district court granted judgment for the plaintiff after finding that the union's failure to timely file the statement was negligence, and as a matter of law amounted to unfair representation.

The Sixth Circuit reversed, holding that mere negligence was insufficient, and that the evidence regarding the prevailing practice had not been considered by the district court. In so holding, the court noted its statements in decisions rendered in a prior appeal in that case: "A union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation. ... [O]ur opinion in this action speaks to a narrow range of cases in which unexplained union inaction, amounting to arbitrary treatment, has **barred an employee from access** to an established union-management apparatus for resolving grievances." Id. at 1211, quoting Ruzicka v. General Motors, 523 F.2d 306, 310 (6th Cir. 1975)("Ruzicka I") and 528 F.2d 912, 913 (6th Cir. 1975)(order denying en banc petition)(emphasis added). The court noted that the union's inaction could well be explained and excused by the union's reasonable reliance on prevailing practice, which would not amount to arbitrary, actionable conduct.

-16-

And in <u>Litton v. United Parcel Service</u>, 15 F.3d 1365 (6th Cir.1994), plaintiff was terminated for dishonesty (failing to disclose a juvenile drug offense on his job application). The union affirmatively decided not to pursue a grievance on his behalf, explaining that it had not succeeded on other grievances involving discharges for alleged dishonesty. Plaintiff proffered evidence that his union shop steward encouraged him to grieve his discharge because it had merit; plaintiff's union head (Cooper) testified that the union did not pursue the grievance, even though it had merit, because he thought they would lose. Moreover, Cooper grudgingly testified that the union had never before refused to prosecute a member's grievance appeal from a discharge.

In reversing the summary judgment granted the union, the Sixth Circuit noted a statement Cooper made to plaintiff to explain the union's decision: "Life's a bitch; then you die. I'm sorry it happened, young man, but there's nothing I can do." The court observed: "In fact, there was something that Cooper could have done, and his statement belies any contention that the union "settled" Litton's grievance or made a decision that the grievance was not worth pursuing due to its lack of merit. Cooper's testimony clearly indicates that Cooper refused to pursue the grievance, not because it lacked merit, but only because of the state committee's past practice of denying falsification grievances." <u>Id</u>. at 1372. This evidence, combined with evidence that the union's treatment of plaintiff's grievance differed from that afforded to all other members, was sufficient to withstand the union's summary judgment motion.

The common thread in these cases is that the union's action or inaction resulted in the loss of plaintiff's contractual grievance rights, the loss of access to the process. Here, as Defendants note, Pearson does not allege that the union abandoned him or

failed to preserve his right to pursue every step of the grievance process. Pearson also cites Dragomier v. Local 1112 UAW, 620 Fed. Appx. 517 (6th Cir. 2015), where the court defined arbitrary conduct:

> [A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. ... Neither mere negligence nor ordinary mistakes, errors, or flaws in judgment suffice. ... Rather, a plaintiff must show the union's actions were wholly irrational, a standard that is described in terms of extreme arbitrariness.

Id. at 521 (internal citations and quotations omitted). In that case, the Sixth Circuit affirmed summary judgment granted to the union on plaintiffs' breach of representation claim based on the union's decision not to process their grievance about wages. The union investigated the complaint and concluded that it lacked merit. In affirming the district court's judgment, the court of appeals described the union's response to plaintiffs' complaints as "far from laudable." Id. at 522. However, the union representatives met with the plaintiffs, reviewed the applicable contract language, and concluded that the grievance lacked merit, informing plaintiffs they would not pursue it. While the union's investigation was neither lengthy nor comprehensive, the court of appeals concluded that the "high standard" that applies to determining if the conduct was arbitrary required affirming the judgment in favor of the union.

      This case does not assist Pearson, in view of the high standard articulated in that case regarding arbitrary conduct, the standard that applies to the union's alleged conduct in this case. Pearson states in his response brief that the "Union mistakenly forgot" to provide him basic information. Accepting Pearson's assertion, as the Court must, this oversight, mistake, or forgetfulness simply does not rise to the level of

conduct that is so far outside the scope of reasonable but mistaken or even negligent conduct, that the trier of fact could find the union's actions were wholly irrational or extremely arbitrary.  Defendants are entitled to summary judgment on Pearson's breach of fair representation claim.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment (Doc. 54, 55) is granted.  Plaintiff's claims are dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: April 12, 2016                s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Senior Judge
                                     United States District Court